[Cite as *State v. Hunter*, **2020-Ohio-2718**.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108684 |
| v. | : | |
| ERIC HUNTER, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627084-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chadwick P. Cleveland, Assistant Prosecuting Attorney, *for appellee*.

Mark A. Stanton, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1}   Eric Hunter appeals his conviction for rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree, following a jury trial that resulted in a six-year term of imprisonment.[1]  We affirm.

{¶ 2}   Hunter and his wife temporarily lived with Hunter's in-law, who owned the two-story, three-bedroom home where the events occurred.  The Hunters were staying with Hunter's in-law for a couple of weeks until they "passed on to where they were going."  There was only one bedroom in the second story that was occupied by the victim, who had known the family since she was five years old and who had also been staying in the home for an extended period of time.  The victim was 22 years old at the time.  Hunter and his wife shared a room on the first floor.  On the evening of the rape, the occupants of the home were sitting in the garage or outside the back of the garage listening to music.

{¶ 3}   Hunter, his wife, and the victim stayed awake the longest, and the Hunters were having drinks as the night continued.  The victim drank a single beer.  Eventually, Hunter's wife went into her bedroom.  After she departed, Hunter started telling the victim about "something sexual that he did with

---

[1] Although the jury found Hunter guilty of rape in violation of R.C. 2907.02(A)(2) (forcible rape), the trial court merged that finding of guilt into the substantial impairment rape under R.C. 2941.25 before imposing the sentence.  Because Hunter was not convicted of forcible rape (in other words there is no sentence imposed on that count as required for a conviction to be final under *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12) and because we affirm the resulting conviction for the substantial impairment rape, we need not consider the merged offense in this appeal.  *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 16; *State v. Young*, 10th Dist. Franklin Nos. 18AP-630 and 18AP-631, 2020-Ohio-462, ¶ 86.

someone else." Hunter went so far as to stand and mimic the sexual movement. The victim felt uncomfortable with the turn in the conversation and excused herself. Hunter claims that the victim's retelling of the events introduced competing excuses that the victim offered when leaving. The victim claims to have said she was going inside to check on her infant son, while Hunter claims that the victim also said that she was going inside to text or talk to her boyfriend.

{¶ 4} Regardless, the victim left Hunter alone and went to her bedroom to fall asleep. The next thing the victim remembers is waking up while lying on her back, feeling pressure inside her vagina, and seeing Hunter's face between her legs with his mouth on her vagina. On this point, Hunter claims that the victim provided a different account to the investigating police officer. In the police report, the victim was recorded as stating that she awoke with Hunter on her back while he had his head between her legs. The jury was presented both versions.

{¶ 5} As soon as the victim awoke, Hunter ran toward the steps and yelled an expletive. Although the victim gave differing accounts of what expletive was used in her trial testimony, as compared to the statements provided the investigating police officer, the general theme was the same — Hunter immediately fled the room and shouted an expletive upon the victim's waking up. The victim was still wearing underwear and a menstrual pad, which had been displaced by Hunter's conduct.

{¶ 6} The victim immediately disclosed the events to Hunter's in-law, who called the police and described the victim as being hysterical. Hunter's wife

apparently left the house with Hunter at that time — neither was present when police officers responded. The victim was taken to the hospital for evaluation and preservation of evidence. DNA implicating Hunter was discovered on the victim's menstrual pad, a portion of which was preserved by the healthcare professional. Upon this evidence, the jury found Hunter guilty of forcible and substantial impairment rape, although only the substantial impairment conviction survived merger.

{¶ 7} In the first two assignments of error, Hunter claims that his conviction is against the weight of the evidence or is based on insufficient evidence. Neither claim has merit.

{¶ 8} R.C. 2907.02(A)(1)(c) provides that "no person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender," if "the other person's ability to resist or consent is substantially impaired because of a mental or physical condition" and the offender is aware of the impairment. Rape under R.C. 2907.02 can occur through the act of penetration or cunnilingus. Penetration is not required to demonstrate cunnilingus. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 86. "[T]he act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *Id.*, citing *State v. Ramirez*, 98 Ohio App.3d 388, 393, 648 N.E.2d 845 (3d Dist.1994), and *State v. Bailey*, 78 Ohio App.3d 394, 395, 604 N.E.2d 1366 (1st Dist.1992). In this case,

however, the indictment included the element of vaginal penetration as it relates to proving sexual conduct.

**{¶ 9}** "Sexual conduct" under R.C. 2907.02 is an element of rape. R.C. 2907.01(A) provides that "sexual conduct" is defined such that vaginal intercourse includes "'the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.'" *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 84, quoting R.C. 2907.01(B).

**{¶ 10}** In this case, Hunter's argument relies on the victim's arguably inconsistent trial testimony. Because the victim's credibility is the primary issue, we need not consider Hunter's sufficiency argument. A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Because the victim's credibility is primarily an issue for the trier of fact with respect to the sufficiency of the evidence, the victim's testimony that she awoke feeling pressure inside her vagina as Hunter's head and mouth were on it is sufficient evidence of penetration.

{¶ 11} The sole issue is whether the victim's ambiguous testimony regarding penetration and the slight inconsistencies in her retelling of the events demonstrate that Hunter committed the substantial impairment rape beyond a reasonable doubt — a matter that must be solely addressed under the weight-of-the-evidence standard of review.

{¶ 12} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. In undergoing this review, appellate courts must "ask whose evidence is more persuasive — the state's or the defendant's?" *Id.* This means that

> The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} In this case, the victim's testimony was largely consistent with the version of events she provided the healthcare professional and the investigating police officer. The minor discrepancies in the expletive she remembers Hunter yelling is of little consequence. Further, the difference between the reports of the victim being awoken with the defendant on her back, but with his head between the victim's legs, as opposed to the victim's trial testimony stating that she awoke on her back to find Hunter's head between her legs was considered and resolved by the trier of fact. On the basic events, the victim's retelling of the story was largely consistent and there was evidence of Hunter's DNA on the menstrual pad within the victim's undergarment, in part corroborating the victim's testimony. And finally, although the victim could not specifically testify to the penetration because she was asleep when the rape was committed, she unambiguously testified to feeling pressure inside her vagina and seeing Hunter's face between her legs immediately upon waking up.

{¶ 14} The jury considered and resolved the conflicts in the testimony and record, and Hunter has not demonstrated this to be the exceptional case warranting appellate intervention. The first and second assignments of error are overruled.

{¶ 15} In the third and fourth assignments of error, Hunter claims that the trial court erred by denying an oral motion for a mistrial that was based on several statements not admitted into evidence after objections were sustained. According to Hunter, the lead investigator testified or attempted to testify (1) to inquiring

about Hunter's wife's safety as he interviewed her; (2) to calling additional officers to accompany him for officer safety to arrest Hunter; and (3) to a belief that Hunter was "on the run" (which came out at the time the officer was testifying about evaluating a phone to determine Hunter's location).   Importantly, all the objections to the three isolated, unsolicited statements were sustained, and the trial court provided the curative instruction for the jury to disregard the inadmissible statements.

{¶ 16} Trial courts are entitled to "wide latitude" when considering motions for a mistrial.  *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 28.  Irregularities or errors in the trial process will not automatically require the trial court to order a mistrial.  *State v. A.M.*, 8th Dist. Cuyahoga No. 106400, 2018-Ohio-4209, ¶ 23, quoting *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988), paragraph two of the syllabus.  A mistrial should be granted only if the substantial rights of the accused are affected.  *Id.*  "In determining whether a defendant was deprived of a fair trial, [appellate courts] must determine whether, absent the error or irregularity, 'the jury would have found the appellant guilty beyond a reasonable doubt.'"  *State v. Junod*, 3d Dist. Mercer No. 10-18-08, 2019-Ohio-743, ¶ 44, quoting *State v. Morris*, 10th Dist. Franklin Nos. 18AP-208 and 18AP-209, 2018-Ohio-5252, ¶ 44, and *State v. Maurer*, 15 Ohio St.3d 239, 267, 473 N.E.2d 768 (1984).  In order to "determine whether the error resulted in prejudice, [appellate courts] must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions,

and (4) the strength of the evidence against the defendant." *Junod*, citing *Morris* at ¶ 44.

{¶ 17} In this case, the unsolicited statements were immediately addressed and, when relevant, curative instructions were provided to the jury. The state did not rely on any of the isolated statements throughout the remainder of the trial. In light of the overwhelming evidence, the victim's testimony, and the DNA evidence implicating Hunter, we cannot say that the trial court abused its discretion in denying the motion for a mistrial.

{¶ 18} In the alternative, Hunter claims that the trial court erred by admitting "overview" testimony from the "professional witnesses." "Overview" testimony, according to Hunter, is testimony from a "professional" witness such as an investigating police officer who lacks direct knowledge of the facts of consequence. We summarily overrule Hunter's argument. Hunter claims that the unsolicited statements from the investigating officer that were the basis of the mistrial discussion were erroneously admitted through the guise of the state providing "overview" evidence to explain the course of investigation.

{¶ 19} The trial court sustained objections to the identified statements, and therefore, there can be no error in the admission of such evidence. The third and fourth assignments of error are overruled.[2]

---

[2] In light of the fact that Hunter has not demonstrated any reversible errors, we need not consider the fifth and final assignment of error in which Hunter claims his convictions should be reversed based on the cumulative-error doctrine. Cumulative effect of errors may constitute an independent ground for reversal even though each instance of trial-court error does not in and of itself constitute cause for reversal. *State*

**{¶ 20}** Hunter's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
MARY EILEEN KILBANE, J., CONCUR

---

*v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 277, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. Thus, the starting premise of a cumulative-error claim is that the defendant has demonstrated multiple instances of error.