[Cite as *State v. Virostek*, 2022-Ohio-1397.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                          No. 110592

    v.                           :

MICHAEL VIROSTEK,                       :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 28, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-655504-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Glen Ramdhan, Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Jaye M. Schlachet and Eric M. Levy, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Michael Virostek ("appellant") appeals his conviction of rape and sentence by the Cuyahoga County Court of Common Pleas. He argues, inter alia, that he was denied effective assistance of counsel, that the state engaged in

prosecutorial misconduct, that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence, and that his constitutional rights were violated both at trial and his sentencing. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Appellant and the victim in this matter, D.R., were lifelong friends. At the time of the incident, the two spoke or texted nearly daily for the prior several years. They were not dating but would sometimes engage in sexual relations and exchange explicit text messages. D.R. was also close friends with appellant's sister.

{¶ 3} On the afternoon of September 22, 2019, appellant and D.R. were both at D.R.'s house having a few drinks. D.R. had two to three beers and two plastic cups of wine, which were larger than a standard pour in a wine glass.

{¶ 4} Later in the evening, D.R. and appellant went to appellant's sister's house to look for one of D.R.'s flowerpots that had gone missing. D.R. described her state at this point as "loaded," "wasted," and "pretty intoxicated." She located the flowerpot and went inside to use the bathroom when she experienced an episode of vertigo. She became dizzy and laid down on the carpeting in front of the bathroom door to ease the vertigo.

{¶ 5} D.R. has been treated for vertigo by her doctor, Dr. McDonough. Dr. McDonough testified at trial that vertigo is a form of dizziness and causes D.R. to have imbalance, unsteadiness, or a very unsteady feeling. The doctor further testified that alcohol can exacerbate a case of vertigo and, in some patients, can even

induce vertigo. Appellant and D.R. both testified that appellant is aware of D.R.'s vertigo and that she gets dizzy from it.

{¶ 6} Dr. McDonough testified that she advised D.R. that when she is having an episode, she could reset her inner ear by lying down and holding her head in different directions for 30 seconds each.

{¶ 7} As D.R. was lying on the floor, appellant appeared and began kissing her neck. D.R. told him "No," but he did not stop and eventually penetrated her without her consent. She felt incapacitated, and her head was spinning.

{¶ 8} When the incident was over, D.R. cleaned up appellant's ejaculate with a tissue. She told appellant to take her home.

{¶ 9} When she got home, D.R. called her friend Antoinette DiPaola, to tell her what had happened. DiPaola stated that D.R. was hysterically crying and unable to talk on the phone. DiPaola repeatedly asked what happened, and D.R. stated that she was raped by appellant.

{¶ 10} DiPaola went to D.R.'s house and found her sobbing and very drunk. She stated that D.R. was very agitated and upset and reeked of alcohol.

{¶ 11} The Mayfield Heights Police Department was called and arrived on scene. As the police officers were asking D.R. what happened, she had to go into the bushes several times because she was dry heaving. Officer Brody Fratantonio stated that D.R. was emotional and upset and that he concluded that she was intoxicated because of her bloodshot eyes, high level of emotions, and inability to even sit down.

{¶ 12} Corporal Joseph Mytrosevich was also present, and he observed D.R.'s demeanor range from emotional, upset, angry, and embarrassed. He believed her to be intoxicated based upon the fact that she was unsteady of her feet, rambling and slurring her words, and her eyes were bloodshot.

{¶ 13} The Mayfield Heights police determined that the incident actually occurred in Lyndhurst, and Lyndhurst police were called to the scene.

{¶ 14} Lyndhurst Police Officer Jonathan Romanin met with D.R. at her home. He stated that she was upset and embarrassed, that he could smell alcohol coming from her person, and that she showed other signs of inebriation.

{¶ 15} D.R. was brought to the Lyndhurst Police Department where she met with Sergeant Mark McConville. He too observed that D.R. was intoxicated, based upon the odor of alcohol on her and her "roller coaster" of emotions.

{¶ 16} Lyndhurst Police Detective Craig Barna also met with D.R. and noted that she was crying, distraught, and intoxicated. He determined that she was intoxicated because of the odor of alcohol and the emotions she was experiencing.

{¶ 17} D.R. also met with Kathryn Tomaro, a community relations liaison and school resource officer for the Lyndhurst Police Department, who has specific training on dealing with victims of sexual assault. She noted that D.R. was very upset and emotional when they met.

{¶ 18} Tomaro took photos of D.R. and accompanied her to the hospital for a Sexual Assault Nurse Examiner ("SANE") examination. While at the hospital, Tomaro heard D.R. slur her words a bit and could tell that she was intoxicated.

{¶ 19} At the hospital, D.R. was treated by Daniele Stoehr, a registered nurse and a SANE trained forensic nurse. D.R. was tearful at times during the SANE examination.

{¶ 20} After the examination, DiPaola returned D.R. to her home around 3:00 a.m. Later that morning, appellant began contacting D.R. via text messages. He sent a number of text messages over the next few days that contained the following statements:

Hey you upset with me?

I am very sad. I guess our friendship has come to an end. I will leave you alone. I will not contact you. If you ever wanted to talk, you have my number. Hopefully your friendship with my sister continues. I will never throw you under the bus. I will never discuss our business.

I will never discuss our business with Michelle or my mother. I do have to drop off my table saw to [D.R.'s neighbor] tomorrow morning around 9:00. Just so you know. I gave him my word that I would do that. Take care [D.R.]

I want to share my thoughts with you. Because I have become pretty attached to you & your kids the last couple months. It's definitely been a friendship & a little more. I am having a very hard time getting you off my mind. Looking back on Sunday, I should've left & went home. I made a poor choice inviting you to Michelle's.

I should have noticed the condition we were both in. I think I took advantage of the situation. I am so very sorry. I hope you can forgive me. I think I ruined things between us. What keeps going through my mind, is you saying when I was at your house the last couple times was . . . "Michael, I don't want you to leave." "I feel safe with you." * * *

I feel I betrayed you & your trust in me. I know I said I would leave you alone, but I just wanted to share my thoughts with you. It's hard to lose a friendship like yours. You have a lot of friends, I do not. You have been a very special person in my life.

You don't have to respond.  I am SO SORRY [D.R.] if I hurt you & disrespected you.

[D.R.] Please contact me.  Talk to me & tell me what's going through your mind.  I cannot read your mind.  If I hurt you on Sunday evening, we need to talk about it & try to resolve it, if possible.  Give us a chance to talk about it.  Do not leave me hanging out here wondering.  Greg did that to you.  And you know how that feels.  You are doing that with me right now.  I do not deserve that [D.R.]  I do not want to lose your friendship over something that can be resolved.  We have worked too hard together, spent a lot of good times together not to be able to resolve an issue.

{¶ 21} D.R. did not respond to the messages but later showed them to Det. Barna, who took pictures of them.

{¶ 22} D.R. eventually spoke with appellant on the phone.  She asked him if he knew what he did to her the other night.  She described to him the bruises left on her body and how the skin of her elbows was peeled off.

{¶ 23} After the phone call, appellant sent D.R. the following text message:

[D.R.]  We really need to talk.  There is absolutely no way I could have put 20 bruises on you.  If you had any bruises, it would have been on the inside of your thighs from my hands.  And I know you did not have any scrapes on your elbows when I dropped you off.

{¶ 24} Appellant then asked D.R. if she went back outside after he dropped her off.  He told her that he was really upset and said that he knew exactly what they had done on Saturday night.  He maintained that he was coherent, or he would not have driven.  Appellant then set forth his recollection of the events:

We went over to Michelle's through her service door.  You went pee in Michelle's downstairs bathroom & came out & laid on the floor.  I lifted your shirt & removed your bra & sucked on your nipples.  I kissed your body and started to remove your pants from your waist.  You lifted your butt & you pulled your pants below your butt & I removed your pants.

I went back up & sucked your nipples and fingered you for about 30 seconds. Then I got on top of you & we had sex for a few minutes. I came on your stomach. Then you went into the bathroom & pee'd again.

You went to my truck while I locked up. You were obviously pissed at me for some reason because you did not talk to me on the way home. I dropped you off at your house & I watched you open the garage.

I would never do anything to hurt you. I thought you were pissed at me because I figured that I took advantage of you by having sex with you because you were pretty drunk. I would of never had sex with you if I thought you were totally out of it. The only reason I went forward & had sex with you, was because you lifted your a[**] and you pulled your pants down below your butt. So, I figured you were willing.

[D.R.], I honestly do not know what else you think happened.

{¶ 25} Appellant sent several additional texts asking D.R. to talk to him. D.R. eventually responded and told him to never contact her again.

{¶ 26} D.R.'s sexual assault evidence collection kit was processed, and a DNA sample was obtained from appellant. Appellant's DNA was found in the internal/external vaginal swabs, the perianal swabs, a dried stain on the abdomen, a dried stain on the inner thigh, and on the bilateral nipples.

{¶ 27} Appellant was indicted on one count of rape by force or threat of force, in violation of R.C. 2907.02(A)(2), one count of rape where the other person's ability to resist or consent is substantially impaired, in violation of R.C. 2907.02(A)(1)(c), and one count of gross sexual imposition, by force or threat of force, in violation of R.C. 2907.05(A)(1).

{¶ 28} Appellant's case was tried to a jury. The state presented the testimony of D.R., DiPaola, Dr. McDonough, Corp. Mytrosevich, Ofc. Fratantonio, Ofc. Romanin, Sgt. McConville, Tomaro, Stoehr, Det. Barna, Susan Salkin (D.R.'s therapist), Lyndhurst Police Officer David Boss, and Marissa Esterline of the Cuyahoga County Regional Forensic Science Laboratory.

{¶ 29} Appellant testified on his own behalf and presented the testimony of Brian C. Cooley, Jay Ewers, Michelle Virostek, and William A. Cox. Appellant denied that D.R. was intoxicated, saying "absolutely not." He testified that he was not intoxicated either. He stated that D.R. did not seem upset when they finished having sex, but after she went into the bathroom and came back out, she seemed upset.

{¶ 30} Appellant stated that after he and D.R. had had sex in the past, he usually sent her a text saying that he had a good time or enjoyed her company. He did not send such a text after the incident in question. Appellant admitted that he sent the texts to D.R. asking if she was upset and saying that he guessed he took advantage of her because she was "pretty drunk."

{¶ 31} Appellant testified that stating that he "took advantage" referred simply to the drinking and inviting D.R. to his sister's house and that did not relate to sex. With regard to appellant's text where he said he was "so sorry" if he had hurt and disrespected D.R., he again stated that it related to the drinking and had nothing to do with sex.

{¶ 32} At the close of the state's case-in-chief and again following his own case-in-chief, appellant moved for judgment of acquittal; both motions were denied. The jury returned a verdict of not guilty on Count 1 (rape by force) and Count 3 (gross sexual imposition by force), and guilty of Count 2 (substantial impairment rape).

{¶ 33} Appellant was sentenced to the mandatory minimum prison sanction of three years with a maximum term of four and one-half years under the Reagan Tokes Act, and he was ordered to register as a Tier III sex offender.

{¶ 34} Appellant filed the instant appeal, raising ten assignments of error for our review:

> 1. Appellant's rape conviction must be reversed as the state of Ohio failed to present sufficient evidence to support the conviction.
>
> 2. By presenting evidence of rape by force for a single act/conduct the state of Ohio implicitly established it lacked sufficient evidence on the charge of rape by substantial impairment where the two separate offenses are irreconcilable as committing one form of the offense precludes committing the other.
>
> 3. Appellant was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution where counsel failed to move the court to sever or otherwise require the state to elect which offense would be sent to the jury — rape by force or substantial impairment.
>
> 4. Appellant was denied effective assistance of trial counsel where counsel failed to object to improper jury instructions and otherwise specifically requested prejudicial non-standard jury instructions and the instructions were otherwise plain error.
>
> 5. Appellant's conviction is against the manifest weight of the evidence.

6. Appellant was denied effective assistance of trial counsel where counsel failed to move to dismiss for violation of speedy trial.

7. Appellant was denied effective assistance of trial counsel where counsel prejudicially misstated in closing that it was unknown if D.R. consumed additional alcohol after returning home.

8. Appellee committed prosecutorial misconduct including shifting the burden of proof which prejudiced appellant.

9. Appellant was denied his constitutional right to a fair trial due to the multiple errors committed in the trial court even if the individual errors are found to be harmless under the doctrine of cumulative error.

10. Appellant's indefinite sentence imposed under the Reagan Tokes sentencing scheme violates appellant's rights under the United States Constitution applied to the State of Ohio through the Fourteenth Amendment and the Ohio Constitution as it denies appellant due process of law; violates the Sixth Amendment right to a jury trial; violates the separation of powers doctrine; does not provide fair warning of the dictates of the statute to ordinary citizens; and the statute conferred too much authority to the Ohio Department of Rehabilitation and Correction (ODCR). The Reagan Tokes sentence must also be vacated where appellant was not provided required notice under R.C. 2929.19(B)(2)(c).

## II. Law and Analysis

{¶ 35} For ease of discussion, we will address some of appellant's assignments of error out of order.

## A. Sufficiency of the Evidence

{¶ 36} In appellant's first assignment of error, he argues that his rape conviction must be reversed because the state failed to present sufficient evidence to support the conviction. Specifically, appellant contends that the state did not prove (1) that D.R. was not the spouse of appellant; and (2) that D.R.'s ability to

resist or consent was substantially impaired by her consumption of alcohol and that he had knowledge of such substantial impairment.

{¶ 37} Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production at trial is conducted. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. A sufficiency of the evidence argument is not a factual determination, but a question of law. *Id.*

### 1. Spousal Element

{¶ 38} Appellant first contends that the verdict was not supported by sufficient evidence because the state failed to prove that D.R. was not the spouse of appellant. R.C. 2907.02(A)(1)(c) provides that:

> No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or

physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

{¶ 39} While the state did fail to ask D.R. if she was the spouse of appellant, there was testimony that appellant and D.R. were lifelong friends who sometimes engaged in sexual relations. This evidence is legally sufficient to support an inference that appellant was not the spouse of D.R. This court has held that when the state fails to affirmatively ask the victim whether she was the spouse of the offender, the trier of fact is permitted to infer from the testimony or circumstances, if sufficient, that the defendant and his victim were not married. *State v. Brown*, 8th Dist. Cuyahoga No. 86577, 2006-Ohio-4584, ¶ 13.

{¶ 40} Accordingly, because there was sufficient evidence upon which the trier of fact could infer that D.R. was not the spouse of appellant, we find appellant's sufficiency argument as to this ground to be without merit.

## 2. Substantial Impairment

{¶ 41} Appellant further contends that there was insufficient evidence for the jury to determine that D.R. was substantially impaired. The Supreme Court of Ohio has observed that "[t]he phrase 'substantially impaired,' in that it is not defined in the Ohio Criminal Code, must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987). "[S]ubstantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *Id.* at 103-104.

{¶ 42} Appellant contends that "intoxication" is not synonymous with "substantial impairment." This court has found that voluntary intoxication is a mental or physical condition that could cause substantial impairment. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 43, citing *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, ¶ 13; *In re King*, 8th Dist. Cuyahoga Nos. 79830 and 79755, 2002-Ohio-2313, ¶ 22. Sexual conduct with an intoxicated person under Ohio law "becomes criminal when the victim's 'ability to resist or consent is substantially impaired by reasons of voluntary intoxication.'" *Jones* at *id.*, quoting *King* at *id.*, citing *State v. Martin*, 12th Dist. Brown No. CA99-09-026, 2000 Ohio App. LEXIS 3649 (Aug. 14, 2000). Substantial impairment can be demonstrated by the testimony of those who have interacted with the victim. *Jones* at *id.*, citing *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78.

{¶ 43} In the instant matter, there was testimony by DiPaola, Tomaro, and all of the police officers who interacted with D.R. that she was intoxicated to the point of slurring her words and smelling of alcohol. D.R. testified that she had two to three beers and two large cups of wine. D.R. considered herself a lightweight when it comes to drinking and described herself as "loaded" and "wasted" after drinking that much. Moreover, the state presented the text messages from appellant acknowledging the "condition" D.R. was in and stating that she was "pretty drunk."

{¶ 44} While appellant attempts to argue that the amount of alcohol consumed by D.R. was not enough to cause substantial impairment, he offers solely his own opinion in support of this. There was no evidence, expert or otherwise,

regarding how much alcohol D.R. would have to consume to be substantially impaired.

{¶ 45} When the jury was assessing whether D.R.'s intoxication rose to the level of substantial impairment, it also had evidence that D.R. was experiencing a bout of vertigo that caused her to feel very dizzy. D.R.'s doctor testified that alcohol could "exacerbate" a case of vertigo.

{¶ 46} Viewing the evidence in the light most favorable to the state, there was sufficient evidence for the jury to find that D.R.'s ability to resist or consent was substantially impaired by her voluntary intoxication from alcohol, along with her vertigo bout.

### 3. Appellant's Knowledge that D.R. was Substantially Impaired

{¶ 47} Finally, appellant contends that the state did not present sufficient evidence that he had knowledge of D.R.'s inability to resist or consent due to her substantial impairment. His assertions, however, are belied by his text messages wherein he apologized for having sex with her given the "condition" she was in and stated that he "took advantage" of the situation. Further, appellant was present the entire time D.R. was drinking and was aware of the amount of alcohol consumed by D.R. *See State v. Keller*, 8th Dist. Cuyahoga No. 106196, 2018-Ohio-4107, ¶ 36.

{¶ 48} Accordingly, again viewing the evidence in the light most favorable to the state, there was sufficient evidence presented for a reasonable jury to conclude that appellant knew or had reasonable cause to believe that D.R.'s ability to resist or consent to sexual conduct was substantially impaired.

{¶ 49} Appellant's first assignment of error is overruled.

## B. Separate Offenses

{¶ 50} In appellant's second assignment of error, he essentially argues that the state should not have been permitted to argue both force and substantial impairment based upon a single act of rape. He further reiterates his sufficiency arguments as to substantial impairment.

{¶ 51} In support of his arguments in this assignment of error, appellant cites *State v. Rucker,* 2020-Ohio-2715, 154 N.E.3d 350 (8th Dist.). *Rucker*, however, addressed merger of forcible rape and substantial impairment rape for purposes of sentencing. *Rucker* has no bearing on the instant case where appellant was only convicted of one count of rape. The entire argument in *Rucker* is that the trial court erred by failing to merge the offenses of forcible rape and substantial impairment rape before sentencing. This can only mean that the defendant in *Rucker* was convicted of both charges. He could, however, only be sentenced for one.

{¶ 52} Because there was evidence presented that could support both forcible rape and substantial rape, it was appropriate for the jury to be instructed on both. *See, e.g., State v. Hunter,* 8th Dist. Cuyahoga No. 108684, 2020-Ohio-2718; *State v. Hartman*, 8th Dist. Cuyahoga No. 105159, 2018-Ohio-2641. We cannot find that the state should have been required to elect to proceed on only one form of rape. Appellant's second assignment of error is overruled.

## C. Manifest Weight of the Evidence

{¶ 53} In appellant's fifth assignment of error, he argues that his conviction was against the manifest weight of the evidence.

{¶ 54} A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 55} Appellant argues that there was a conflict and question of credibility between the evidence presented by himself and the state, and he contends that the jury lost its way in believing that D.R. was substantially impaired and that her vertigo prevented her from consenting to sexual activity with appellant. He further reiterates his argument that he could not have been convicted of both forcible rape and substantial impairment rape.

{¶ 56} We find no merit to this assignment of error. As this court has previously stated:

> The criminal manifest weight of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997). Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question:

whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id*. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 2000-Ohio-276, 723 N.E.2d 1054 (2000).

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id*., quoting *Thompkins* at *id*. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at *id*.

*State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 86-87.

{¶ 57} When sitting as the "thirteenth juror" analyzing a manifest weight argument, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and, in resolving conflicts in the evidence, determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed and a new trial ordered. *Cleveland v. Yontosh*, 8th Dist. Cuyahoga No. 99076, 2013-Ohio-3137, ¶ 10, citing *State v. Caraballo*, 8th Dist. Cuyahoga No. 89775, 2008-Ohio-5248.

{¶ 58} In reviewing the entire record, we find that D.R.'s version of the events, the observations of the police officers who testified that she was intoxicated, and appellant's admissions within the subsequent text messages were more persuasive than appellant's proffered version of the events. Based on the facts in the record before this court, we cannot say this is the exceptional case that requires reversal under the manifest weight standard.

{¶ 59} Finally, appellant's argument that the jury should not have considered both forcible rape and substantial impairment rape was already addressed in our analysis of appellant's second assignment of error and found to lack merit.

{¶ 60} Appellant's fifth assignment of error is overruled.

## D. Ineffective Assistance of Counsel

{¶ 61} In appellant's third, fourth, sixth, and seventh assignments of error, he argues that he was denied the effective assistance of counsel when his trial counsel (1) failed to move the court to sever or otherwise require the state to elect which rape count would be considered by the jury; (2) failed to object to improper jury instructions and requested prejudicial nonstandard jury instructions; (3) failed to move to dismiss the case on speedy-trial grounds; and (4) prejudicially misstated during closing argument that it was unknown whether D.R. consumed additional alcohol after returning home.

{¶ 62} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To determine whether counsel was ineffective, appellant must show that: (1) counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense in that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland.*

{¶ 63} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965). In evaluating whether a petitioner has been denied the effective assistance of counsel, the Supreme Court of Ohio held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

{¶ 64} When making that evaluation, a court must determine whether there has been a substantial violation of any of defense counsel's essential duties to his client and whether the defense was prejudiced by counsel's ineffectiveness. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). To show that a defendant has been prejudiced, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Bradley* at paragraph three of the syllabus; *Strickland.*

## 1. Election of Charges

{¶ 65} Appellant's third assignment of error argues that his trial counsel was ineffective when he failed to ask the court to sever the rape counts or require the state to elect which count, rape by force or substantial impairment, would be considered by the jury.

{¶ 66} As outlined above, under the facts of this case, the charges were not required to be tried separately nor was the state required to elect to proceed on rape by force or rape resulting from substantial impairment. Accordingly, we cannot find that trial counsel was ineffective for failing to argue that the jury could not consider both rape by force and substantial impairment rape. Appellant's third assignment of error is overruled.

## 2. Failure to Object to Jury Instructions/Plain Error

{¶ 67} Appellant's fourth assignment of error asserts that his trial counsel was ineffective by failing to object to improper jury instructions and requested prejudicial nonstandard jury instructions. Specifically, appellant contends that the jury was instructed on the mens rea element of purposely rather than knowingly with regard to the substantial impairment issue. Appellant argues this constituted plain error.

{¶ 68} The instruction in question stated as follows:

Before you can find the Defendant, Michael Virostek, guilty of rape, you must find beyond a reasonable doubt that on or about September 22nd of 2019, and in Cuyahoga County, Ohio, the Defendant, Michael Virostek, did engage in sexual conduct, to-wit: Vaginal penetration, with [D.R.] who was not the spouse of the offender, and the ability of [D.R.] to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age, and Michael Virostek knew or had reasonable cause to believe that [D.R.'s] ability to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age.

Now, in Count 1 I defined already sexual conduct, privilege, resistance, and purpose, and those having been defined in Count 1 you just use those definitions again so I don't have to read them to you or print them

again. So use those same definitions that I gave you and apply them here in Count 2.

{¶ 69} "'As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged[.]'" *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). However, "[t]he failure to instruct on each element of an offense is not necessarily reversible as plain error." *Wamsley* at *id.*, citing *Adams* at paragraph two of the syllabus. "Rather, an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Wamsley* at *id.*, citing *Adams* at paragraph three of the syllabus.

{¶ 70} The Supreme Court of Ohio has recognized that "terms of common usage need not be defined for the jury." *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 106, citing *State v. Riggins*, 35 Ohio App.3d 1, 8, 519 N.E.2d 397 (8th Dist.1986). Thus, if the undefined term is one of common usage and is used in the jury instruction in that sense, the failure to define the term does not mandate reversal. *State v. Watkins*, 10th Dist. Franklin No. 01AP-1376, 2002-Ohio-5080, ¶ 39, citing *Riggins* at *id.* Moreover, where there is sufficient evidence upon which a jury could reasonably conclude that all the elements of the offense have been proven beyond a reasonable doubt, the failure to define a term is harmless error. *Watkins* at *id.*

{¶ 71} We find nothing in this case that would mandate reversal due to the trial court's failure to define "knew or had reasonable cause to believe" for the jury. The language was used in the jury instruction in the common sense. The jury apparently understood the terms used; it did not request clarification or definition, and appellant does not explain what incorrect meanings the jury could have attributed to "knew or had reasonable cause to believe."

{¶ 72} In addition, appellant contends that his trial counsel erroneously asked for additional instructions regarding the determination of substantial impairment. He maintains that he was substantially prejudiced by both of these improper instructions.

{¶ 73} Per appellant's request, the court gave the following additional instruction from outside of the Ohio Jury Instructions regarding substantial impairment:

> Now, in determining whether a person is substantially impaired you may consider whether the person is able to perform normal motor functions, including standing and walking. You may consider whether they were capable of engaging in normal speech activities and/or whether their problem solving skills were diminished.

{¶ 74} Appellant argues that this additional language should not be used to determine whether a victim was substantially impaired but rather for the assessment of a defendant's knowledge of such substantial impairment. Appellant argues that his counsel was ineffective for requesting this additional improper language.

{¶ 75} Appellant acknowledges that the additional language was requested by his trial counsel. Consequently, this constitutes invited error. This court has previously held that an ineffective-assistance-of-counsel claim will not lie when the claimed error had been invited because "'[t]here is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error.'" *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 29 (8th Dist.), quoting *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 9. *See also State v. West*, 8th Dist. Cuyahoga Nos. 97391 and 97900, 2013-Ohio-96, ¶ 27; *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 35. This rule has been applied when the claimed error was the result of trial counsel's exercise of trial strategy.

{¶ 76} In the instant matter, trial counsel's request for additional language regarding substantial impairment constituted trial strategy. He apparently believed that the jury needed the additional language to guide its deliberations. Thus, any error was invited error, and we will not consider it.

{¶ 77} Appellant's fourth assignment of error is overruled.

### 3. Failure to Move for Dismissal Based upon Speedy-Trial Violations

{¶ 78} In appellant's sixth assignment of error, he argues that his trial counsel was ineffective by failing to move to dismiss the case based upon speedy-trial grounds.

{¶ 79} To support an ineffective-assistance claim on this basis, appellant must show there was a valid basis for moving to dismiss based on a speedy-trial

violation and that such a motion would have affected the outcome. *State v. Pond*, 8th Dist. Cuyahoga No. 91061, 2009-Ohio-849, ¶ 12, citing *State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530.

{¶ 80} Appellant contends that his trial did not commence until 443 days after his arrest, well after the time permitted under statute. He acknowledges that some motions that he filed would have tolled the time but maintains that even assuming that all of such time was counted against him, he was still not brought to trial until 296 days from the date of his arrest, and thus his right to speedy trial was violated.

{¶ 81} R.C. 2945.71 requires the state to bring a felony defendant to trial within 270 days of arrest. Each day a defendant is held in jail in lieu of bail solely on the pending charge is counted as three days. R.C. 2945.71(E). If the state does not bring a defendant to trial within the speedy-trial limits, the court, upon motion, must discharge the defendant. R.C. 2945.73(B). A defendant establishes a prima facie case for discharge based on a speedy-trial violation when he or she demonstrates that more than 270 days elapsed before trial. *See State v. Butcher*, 27 Ohio St.3d 28, 500 N.E.2d 1368 (1986). The burden then shifts to the state to show that R.C. 2945.72 extended the time limit. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55-56, 661 N.E.2d 706 (1996).

{¶ 82} The statutory speedy-trial right begins at the time of a defendant's arrest, even if a person is not incarcerated pursuant to arrest. *Shaker Hts. v. Kissee*, 8th Dist. Cuyahoga No. 81301, 2002-Ohio-7255, ¶ 20. "The right to a speedy trial

arises when a person becomes an 'accused.'" *Id.*, citing *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)

{¶ 83} Whether a trial court's ruling on a speedy-trial question was correct presents a mixed question of law and fact. *State v. Borrero*, 8th Dist. Cuyahoga No. 82595, 2004-Ohio-4488, ¶ 10, citing *State v. Barnett*, 12th Dist. Fayette No. CA2002-06-011, 2003-Ohio-2014. This court must construe the statutes strictly against the state when reviewing the legal issues in a speedy-trial claim. *Cook* at 57. Moreover, in analyzing the procedural timeline record of the case, this court is required to strictly construe any ambiguity in the record in favor of the accused. *State v. Johnson*, 8th Dist. Cuyahoga Nos. 78097, 78098, and 78099, 2001 Ohio App. LEXIS 999, 6 (Mar. 8, 2001).

{¶ 84} The parties do not dispute that appellant's arrest occurred on February 17, 2020, and that he posted bond the following day. The speedy-trial clock thus began the day after appellant's arrest on February 18, 2020. *See State v. Sanders*, 8th Dist. Cuyahoga No. 107253, 2019-Ohio-1524, ¶ 20 (the day of the arrest does not count in a speedy-trial calculation). Because appellant was in jail on February 18, 2020, this day counts as three days.

{¶ 85} While appellant was reindicted on January 21, 2021, this did not alter the running of the speedy-trial clock nevertheless, which began when appellant was arrested and charged with offenses following the incident. When the subsequent charges arise out of the initial arrest and are not based on any new facts discovered by the state, the date of the original arrest commences the speedy-trial clock. *State*

*v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 18, citing *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989).

{¶ 86} Appellant has shown that 445 days elapsed between the date of his arrest and when the case was brought to trial on May 5, 2021, which includes three days for the day that he spent in jail after the day of his arrest. Appellant, therefore, established a prima facie case of a speedy-trial violation. The burden thus shifts to the state.

{¶ 87} Under R.C. 2945.72, the time within which the state must bring an accused to trial is extended for various reasons, including motions filed and continuances requested by the accused, the time required to secure counsel for the accused, and reasonable continuances granted other than upon the accused's motion. *See, e.g., State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283; *State v. Byrd*, 8th Dist. Cuyahoga No. 91433, 2009-Ohio-3283.

{¶ 88} The state claims that only 178 days of the 270 were used and presents the following count based upon the docket entries for the cases:

1. 2/18/20 — 3 days (appellant in jail)

2. 2/19/20 – 2/20/20 — 2 days

3. 2/20/20 – 3/20/20 — 0 days (appellant moved for discovery)

4. 3/21/20 – 4/1/20 — 12 days

5. 4/1/20 – 4/20/20 — 20 days

6. 4/21/20 – 5/26/20 — 0 days (pretrial continued by agreement of all parties due to COVID-19)

7. 5/26/20 – 6/29/20 — 0 days (pretrial continued by agreement of all parties due to COVID-19 and ongoing discovery)

8. 6/29/20 – 7/28/20 — 0 days (pretrial continued by agreement of all parties due to COVID-19)

9. 7/28/20 – 8/13/20 — 0 days (pretrial continued by agreement of all parties due to COVID-19 and ongoing discovery)

10. 8/11/20 – 9/14/20 — 35 days

11. 9/14/20 – 10/15/20 — 31 days

12. 10/2/20 – 11/9/20 — 0 days (appellant's motion for victim's medical records and in camera inspection)

13. 11/9/20 – 11/23/20 — 14 days

14. 11/23/20 – 12/9/20 — 31 days

15. 12/7/20 – 1/14/21 — 27 days

16. 1/14/21 – 5/2/21 — 0 days (trial continued due to COVID-19)

17. 5/3/20 – 5/5/20 — 3 days

Total = 178 days

{¶ 89} The state further argues that beyond any joint continuances, additional time should be tolled because appellant did not respond to the state's request for discovery of April 1, 2020, until July 13, 2020.

{¶ 90} Appellant agrees that the time was tolled for 30 days when he moved for discovery on February 20, 2020, and acknowledges a joint request for continuance of trial from November 9, 2020, to January 25, 2021. He does not concede that any of the pretrials that were continued by agreement of all parties

should toll the time. However, appellant did not dispute any of the state's above assertions or calculation of time in his reply brief.

{¶ 91} Under R.C. 2945.72(H), "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion" tolls the time within which an accused must be brought to trial.

{¶ 92} The court continued the trial for COVID-19 concerns between January 14, 2021, and May 2, 2021. Due to the ongoing pandemic, we find that this continuance was reasonable under R.C. 2945.72(H) and should toll the speedy-trial time for 108 days. The parties jointly agreed to multiple continuances of pretrials, due to COVID-19 and ongoing discovery. We find that these agreed continuances further tolled the time for 114 days. *See State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260 (joint request to continue tolled the running of the speedy-trial time.). By subtracting the 108 days and 114 days from the 445 days between the date of appellant's arrest and the commencement of his trial, without even considering any tolling time for discovery and appellant's motion for the victim's medical records, we find that appellant was brought to trial well within the 270-day requirement. Thus, we cannot find that appellant's speedy-trial rights were violated.

{¶ 93} Consequently, because there was no basis to move to dismiss the case upon speedy-trial grounds, we cannot say that appellant's counsel was ineffective for failing to file such a motion. Appellant's sixth assignment of error is overruled.

## 4. Misstatements in Closing Argument

**{¶ 94}** In appellant's seventh assignment of error, he argues that his trial counsel erroneously and prejudicially misstated an essential fact regarding observations of D.R.'s possible level of intoxication made after she returned home from the alleged rape.

**{¶ 95}** In support of his argument, appellant points to the following testimony from DiPaola regarding the telephone call she received from D.R. after appellant had brought D.R. home:

Q: What was her demeanor on the phone? Anything else?

A: She was drinking, and drunk, and very upset.

**{¶ 96}** Appellant maintains that, rather than citing this testimony in his closing argument, his trial counsel stated as follows:

> We don't know what happens from 7 o'clock until roughly 8:30 when the police arrive. We don't know what she does at home. We don't know if she consumes alcohol to calm her nerves. There's no testimony about it. We can't guess. But we just simply do not know what happened.

**{¶ 97}** We cannot find that the above statement by appellant's trial counsel constituted ineffective assistance of counsel. Trial counsel's statement was accurate in that there was no actual evidence that D.R. was drinking between the time she arrived home and the time that she called DiPaola. The response by DiPaola that D.R. "was drinking and drunk" does not necessarily mean that D.R. was actively drinking at that time or had been drinking after she was dropped off at home. DiPaola was responding to a question about D.R.'s demeanor on the phone.

{¶ 98} Appellant cannot demonstrate that he was prejudiced by this one statement during closing argument. The jury heard the testimony by DiPaola and decided what weight to give it, regardless of whether appellant's trial counsel cited it during his closing argument.

{¶ 99} Closing arguments fall under the ambit of trial tactics, and "[d]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Weems*, 8th Dist. Cuyahoga No. 98397, 2013-Ohio-1343, ¶ 16, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810. Further, closing arguments are not evidence. They are an opportunity to comment on the evidence and lay out a favorable version of events.

{¶ 100} The Third District has repeatedly held that "'the manner and content of trial counsel's closing arguments are a matter of trial strategy and do not constitute ineffective assistance of counsel.'" *State v. Pellegrini*, 3d Dist. Allen No. 1-12-30, 2013-Ohio-141, ¶ 47, quoting *State v. Turks*, 3d Dist. Allen No. 1-08-44, 2009-Ohio-1837, ¶ 42, citing *State v. Williams*, 3d Dist. Marion No. 9-07-61, 2008-Ohio-3887, ¶ 70.

{¶ 101} Examining the statements made by appellant's trial counsel during closing argument, we cannot say that they fell below an objective standard of reasonable performance that deprived appellant of effective assistance of counsel. There is little, if any, probability that a different argument would have resulted in a different outcome in this case. Appellant's seventh assignment of error is overruled.

## E. Prosecutorial Misconduct

{¶ 102} In appellant's eighth assignment of error, he asserts that the prosecutor engaged in misconduct by shifting the burden of proof to appellant. Specifically appellant contends that the state provided no evidence as to the element that D.R. was not the spouse of appellant but stated in his closing argument that D.R. and appellant were not married and that "no one [was] claiming they were." Appellant further contends that the prosecutor engaged in misconduct by arguing to the jury that it should consider whether D.R. was intoxicated rather than substantially impaired.

{¶ 103} "The test for prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 198, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). We must look at the entire closing argument to determine whether it deprived appellant of a fair trial or prejudiced him. *State v. Morton*, 8th Dist. Cuyahoga No. 109200, 2021-Ohio-581, ¶ 25, citing *Were* at *id*. In closing, the prosecutor argued that D.R. was substantially impaired due to two causes: her vertigo and her intoxication.

{¶ 104} While appellant is correct that the required showing is "substantial impairment" rather than mere intoxication, the state was not attempting to argue otherwise. While the state did spend time discussing intoxication, it was for the purpose of setting forth one of the two circumstances that it argued contributed to

D.R.'s substantial impairment. Consequently, the prosecutor's arguments regarding intoxication neither deprived appellant of a fair trial nor prejudiced him.

{¶ 105} Moreover, we have determined above that there was sufficient evidence for the trier of fact to infer that D.R. was not the spouse of appellant in order for appellant to be convicted of rape. Thus, the prosecutor's statements as to this element did not constitute misconduct, and appellant's argument is without merit.

{¶ 106} Appellant's eight assignment of error is overruled.

### F. Cumulative Error

{¶ 107} In appellant's ninth assignment of error, he argues that he was denied his constitutional right to a fair trial due to the multiple errors committed in the trial court, even if the individual errors are found to be harmless under the doctrine of cumulative error. As we have determined that there were no errors committed in the trial in this matter, appellant's ninth assignment of error is overruled.

### G. Sentencing under the Reagan Tokes Act

{¶ 108} In appellant's tenth assignment of error, he contends that his indefinite sentence under the Reagan Tokes Act violates his right to jury trial, his right to due process, and violates the separation-of-powers doctrine. In support of these arguments, appellant cites our decisions in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809; *State v. Daniel*, 8th Dist. Cuyahoga No.

109583, 2021-Ohio-1963; and *State v. Sealey*, 8th Dist. Cuyahoga No. 109670, 2021-Ohio-1949.

{¶ 109} Appellant further contends that the Reagan Tokes Act does not provide fair warning of the dictates of the statute to ordinary citizens and it conferred too much authority to the Ohio Department of Rehabilitation and Correction. In addition, he asserts that he was not provided the required notice under R.C. 2929.19(B)(2)(c).

{¶ 110} We need not dwell on these arguments. The Supreme Court of Ohio held in *State v. Maddox*, Slip Opinion No. 2022-Ohio-764, that constitutional challenges to the Reagan Tokes Law are ripe for review. This court has recently conducted en banc review of the constitutionality of the Reagan Tokes Act. *See State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. In *Delvallie*, we overruled challenges to the constitutionality of the Reagan Tokes Act (enacted through S.B. 201) with regard to the right to due process, the right to a jury trial, and separation of powers. Thus, pursuant to *Delvallie,* we overrule appellant's constitutional arguments.

{¶ 111} With regard to the remainder of appellant's arguments regarding the Reagan Tokes Act, we find that appellant has not expanded on these conclusory statements or presented any authority in support of his propositions. We decline to craft an argument for him.

{¶ 112} Appellant's tenth assignment of error is overruled.

# III. Conclusion

{¶ 113} Appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. In addition, the state did not engage in prosecutorial misconduct, and appellant was not denied the effective assistance of counsel. Finally, appellant's sentence under the Reagan Tokes Act was proper and did not violate his constitutional rights.

{¶ 114} All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

SEAN C. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR

N.B.  Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision. For a full explanation of her analysis, *see State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470 (Laster Mays, J., concurring in part and dissenting in part).