[Cite as *Cleveland v. Dexter*, 2019-Ohio-4057.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND, :

    Plaintiff-Appellee, :

    v. :

SAMMIE DEXTER, III, :

    Defendant-Appellant. :

No. 107817

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 3, 2019

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2018 CRB 004275

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, and Karrie D. Howard, Chief Prosecutor, and Joan M. Bascone, Assistant Prosecutor, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and David M. King, Assistant Public Defender, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Sammie Dexter, III ("Dexter"), appeals his domestic violence and menacing convictions. For the reasons set forth below, we affirm.

{¶ 2} In March 2018, Dexter was charged with domestic violence, endangering children, aggravated menacing, and unlawful restraint in Cleveland Municipal Court. The charges arise from an incident with the victim, who is the mother of his daughter, S.D.

{¶ 3} In August 2018, the matter proceeded to a bench trial, where the following evidence was adduced.

{¶ 4} Dexter and victim are S.D.'s parents. S.D. was seven years old at the time of the incident. Victim has another daughter, V.W., who was 12 years old at the time of the incident. On the day in question, victim was driving through Dexter's neighborhood with S.D. and V.W. when S.D. recognized the street and asked to visit with Dexter. Victim told S.D. that she will drop her off at her dad's if he answers his phone. Victim eventually spoke with Dexter and made arrangements to drop off S.D. at his house. Dexter told victim his girlfriend, Tracey Wiley ("Wiley"), would meet them there. Victim testified when she dropped off S.D., she observed Dexter's car in the driveway. S.D. exited victim's car and entered Dexter's house through the side door. Victim observed hands embrace S.D. at the door. She assumed it was Dexter because the hands were a similar complexion to Dexter's. Victim then left Dexter's house.

{¶ 5} Approximately ten minutes later, victim received a "private call" from Wiley, who told her to come and pick up S.D. Victim returns to Dexter's house to find no cars in the driveway. Moments later, Dexter pulled up "crazy on the curb."

Victim heard Dexter on the phone with Wiley, instructing her to not call the police. Wiley then pulled up to the house as well.

{¶ 6} Victim was in her car in Dexter's driveway with her window down when Dexter approached her window. Victim testified that he was yelling at her and "talking crazy." Victim then started to yell back when V.W. said "y'all both acting childish." At that point, victim rolled up the window and went to get S.D., who was crying on the grass by the passenger side of the car. Victim and Dexter began to struggle over S.D. when victim went to put S.D. in the car. Dexter told victim to "give me the baby before I punch you in the face."

{¶ 7} Dexter then punched victim in the face as they still held onto S.D. According to the victim, he punched her in the face twice, which caused her to fall into the backseat of her car, injuring her shoulders. He also choked victim as she was in the backseat, telling her "yeah, this what you like." Victim fought back and tried to get Dexter off of her. V.W. also testified that Dexter threatened to punch her mother before he punched her, pushed her into their car, and choked her. Dexter eventually got off of victim, slammed the car door, and walked toward his house.

{¶ 8} Victim then put S.D. in the car. At the same time, V.W. charged toward Dexter and his girlfriend. Victim held V.W. back. V.W. was angry at Dexter for punching and choking her mother. Afterwards, V.W. sent Dexter threatening text messages.

{¶ 9} Victim then left with S.D. and V.W. and tried to drive to her cousin's house with the intent of making a police report. Victim was not able to make it to

her cousins because she had a seizure.[1]  Victim was able to drive to a gas station where her cousin met her.  Someone carried victim from her car into her cousin's car.  Her cousin then drove victim to the police station so she could make a police report.

{¶ 10} Victim had another epileptic episode at the police station, while Cleveland Police Officer Lakisha Harris attempted to take a police report.  Video of this seizure episode was played for the court.  The video depicts victim apparently unaware of her surroundings, nonverbal, and unable to lift her head.  Victim was taken by ambulance (where she had another seizure) to the hospital for treatment and returned to the station later that evening to complete the report.

{¶ 11}  While in the emergency room, victim was treated by Nurse Kelly Meers ("Nurse Meers").  Nurse Meers assessed victim after reporting that she was punched, choked, and pushed into a car by Dexter.  While in the emergency room, victim complained of left shoulder pain and neck pain.

{¶ 12}  Wiley and Dexter testified on behalf of the defense.  Wiley testified that she was home when S.D. knocked on the door.  She was surprised to have S.D. arrive at her home.  Dexter was not home at the time because he drove to victim's house to see if he could arrange a visit with S.D.  Wiley then spoke with Dexter who instructed Wiley to return S.D. to her mother because of past visitation problems with victim.

---

[1]Victim suffers from epileptic seizure episodes.

{¶ 13} Wiley took S.D. and went in search of victim. Wiley returned home less than 15 minutes later after she could not locate victim. When she returned home, she found Dexter and victim already there. Dexter was standing outside victim's car window. Wiley watched S.D. run over to her dad and hug him, who was on the passenger side of victim's car at this point. Wiley testified that while S.D. and Dexter were hugging, victim got out of her car, grabbed at S.D., and started hitting Dexter, which caused Dexter and victim to fall back into the car. Dexter was on top of victim with his hands on her wrists, asking her to stop. Wiley was pleading with victim to stop. At some point the altercation stopped, Dexter removed himself from the car, and went inside the house.

{¶ 14} Wiley also testified that the usual procedure for weekend visitation is for S.D. to be dropped off and picked up from day care. On the prior Friday, S.D. was not at day care to be picked up as indicated in the agreement.

{¶ 15} Dexter testified that this was a visitation weekend for him, but it had been over three weeks since the weekend visitation was made available. He attempted to arrange a visit that day, but decided that he would need to have the assistance of the local police due to the fact he had been previously attacked several times by victim.

{¶ 16} While waiting at victim's house with the police, S.D. called Dexter on his cell phone and indicated that she wanted to see him. He spoke with victim who said she was coming to his house with S.D. He told her that he could have Wiley meet her there. Dexter then called Wiley to apprise her of his conversation with

victim. Dexter testified that when he arrived back home, he approached victim to discuss the confusion with the visitation. Shortly thereafter, S.D. returned with Wiley and ran up to Dexter. Victim attempted to grab S.D. from Dexter and started slapping and kicking Dexter. Dexter testified that he defended himself from victim and he did not choke or punch her during this incident.

{¶ 17} On cross-examination, Dexter clarified that he did in fact see S.D. a week earlier at the father-daughter dance and the only reason victim came back to his house was because Wiley told her to come and get S.D. He also clarified that he apologized to the court during his direct testimony for yelling because he was "jailed for something [he] didn't do."

{¶ 18} After the conclusion of trial, the court found Dexter guilty of domestic violence, menacing (the lesser included offense), and unlawful restraint. The court found him not guilty of child endangering. The court sentenced Dexter to a total of 270 days in jail and a $1,750 fine. The court suspended Dexter's sentence and fine and ordered him to serve two years of active probation. The court also ordered Dexter to pay court costs, attend domestic violence counseling, have no contact with victim, and maintain employment.

{¶ 19} Dexter now appeals, raising the following four assignments of error for review:

### Assignment of Error No. 1

[Dexter's] convictions for domestic violence and menacing were against the manifest weight of the evidence.

## Assignment of Error No. 2

The trial court erred by allowing numerous instances of hearsay testimony to be admitted into evidence.

## Assignment of Error No. 3

The trial court erred by denying [Dexter] his right to present a defense in violation of the United States Constitution Amendments V, VI, and XIV, and the Ohio Constitution Article I[,] Section 10.

## Assignment of Error No. 4

Dexter was denied the effective assistance of counsel in violation of the United States Constitution Amendments V, VI, and XIV, and the Ohio Constitution Article I[,] Section 10.

## Manifest Weight

{¶ 20} In the first assignment of error, Dexter argues that his domestic violence and menacing convictions are against the manifest weight of the evidence. He maintains that he did not attack victim and the physical evidence was lacking to corroborate her injuries. He also challenges the veracity of V.W.'s testimony.

{¶ 21} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 387, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

**{¶ 22}** When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "'thirteenth juror'" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin*.

**{¶ 23}** Here, the evidence demonstrates victim and V.W. both testified that Dexter punched victim and choked her, which resulted in the victim having neck and shoulder pain. Victim, who shares a daughter with Dexter, then had a seizure on the way to her cousin's house, a seizure in the police department lobby, and a seizure in the ambulance on the way to the hospital. Additionally, the video in the police station lobby appears to depict the victim actually having a seizure. In the video, victim is unable to hold her head up or speak. Moreover, Dexter and Wiley both testified that Dexter was on top of victim in the backseat of her car with his hands on her, which corroborates victim's testimony.

{¶ 24} With regard to the credibility, V.W.'s testimony corroborated her mother's testimony that Dexter physically attacked her mother. Both victim and V.W. testified that V.W. attempted to charge toward Dexter after the incident. V.W. then sent threatening texts, which V.W. explained were sent out of anger from the incident.

{¶ 25} On the other hand, Dexter's testimony was inconsistent. Victim and Dexter both testified that Dexter told victim to drop off S.D. to Wiley. Dexter testified that he called Wiley to apprise her of the situation. Wiley, however, contradicted this fact by testifying she was not aware that S.D. was coming over. Moreover, Dexter testified that he had not seen his daughter for three weeks, but then later testified that he saw S.D. the prior week.

{¶ 26} Based on the foregoing, we cannot say this is the exceptional case that requires reversal under the manifest weight standard.

{¶ 27} Accordingly, the first assignment of error is overruled.

<u>Hearsay Testimony</u>

{¶ 28} In the second assignment of error, Dexter argues the trial court considered inadmissible hearsay from Nurse Meers and V.W., which bolstered victim's credibility.

{¶ 29} Hearsay is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within a specific exception outlined in the rules of evidence. Evid.R. 802. Statements made for the purposes of medical diagnosis and treatment "are a clearly defined,

longstanding exception to the rules of hearsay." *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 27. Evid.R. 803(4) allows for the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Additionally, "'courts have consistently found that a description of the encounter and identification of the perpetrator are within [the] scope of statements for medical treatment and diagnosis.'" *Echols* at ¶ 27, quoting *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 21, citing *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, at ¶ 15; *State v. Scott*, 3d Dist. Hardin No. 6-94-17, 1995 Ohio App. LEXIS 2527 (June 7, 1995); *State v. Shepherd*, 8th Dist. Cuyahoga No. 62894, 1993 Ohio App. LEXIS 3387 (July 1, 1993). "'The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted.'" *Id.* at ¶ 28, quoting Staff Note to Evid.R. 803(4).

{¶ 30} Here, Nurse Meers testified that victim arrived to the emergency room by ambulance after EMS was called to the police station due to a seizure. EMS advised that they had just given victim seizure medication because she had a seizure while en route to the emergency room. Nurse Meers further testified she assessed victim after reporting she was punched, choked, and pushed into a car by Dexter. Defense counsel did not object to this testimony. These statements are reasonably

pertinent to an accurate diagnosis, and therefore, the admission of this evidence was proper.

{¶ 31} With regard to V.W., Dexter contends the court improperly allowed hearsay testimony from V.W. when the city of Cleveland attempted to elicit from V.W. what S.D. said. Defense counsel objected to this testimony. The court overruled the objection and allowed V.W. to also testify what her mother, Dexter, and Wiley said. We note, that "when the trial court is the trier of fact, we presume that the judge disregards improper hearsay evidence unless there is affirmative evidence in the record to the contrary." *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 16, citing *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659. Dexter has not pointed to any statements made by the trial court that would lead us to conclude that the trial court considered inadmissible hearsay evidence in reaching its decision.

{¶ 32} Moreover, a review of the record reveals that Dexter was allowed great latitude at trial, including hearsay testimony. Dexter testified undisturbed for ten pages until the court interjected. The court stated:

THE COURT: Now, you could stop. I've given you so much leeway.

[DEFENSE COUNSEL]: Understood. Appreciate it, your Honor.

[DEFENSE COUNSEL]: Mr. Dexter —

THE COURT: — so typically, when you're doing direct examination, the attorney asks questions. We've, probably, did 20 minutes of no questions.

[DEFENDANT]: I'm sorry, your Honor, I just —

THE COURT: — it's so so not appropriate, counselor. So I needed to step in and, kinda, get the train back on the tracks.

{¶ 33} Based on the foregoing, the second assignment of error is overruled.

<u>Right to Present a Defense</u>

{¶ 34} In the third assignment of error, Dexter argues the court denied him his right to present evidence demonstrating that victim and V.W. had cause to concoct the allegations against him.

{¶ 35} In *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, the Ohio Supreme Court discussed the right to a meaningful opportunity to present a complete defense and stated:

> In *Chambers v. Mississippi* (1973), 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297, the court recognized that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Although Chambers referred to due process, the court has since explained that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (Citations omitted.) *Crane v. Kentucky* (1986), 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636, quoting *California v. Trombetta* (1984), 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413, and citing *Chambers*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297; and *Washington v. Texas* (1967), 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019.
>
> * * *
>
> The court has consistently recognized, however, that this constitutional right is not absolute and does not require the admission of all evidence favorable to the defendant. *See, e.g., United States v. Scheffer* (1998), 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restriction"); *Taylor v. Illinois* (1988), 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 ("The accused does not have an

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas* (1987), 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 ("the right to present relevant testimony is not without limitation").

*Id.* at ¶ 12-13.

{¶ 36} Dexter argues that when defense counsel attempted to have Dexter or Wiley testify to or authenticate the visitation order, the trial court disallowed it, determining that it was not relevant. He argues that the court should have admitted the visitation order, given the lack of physical evidence to corroborate the accusations against him.

{¶ 37} We find Dexter's arguments unpersuasive. Dexter and Wiley both testified to the visitation order and the details relating to it, including the agreed pickup times and location. Therefore, Dexter was not prohibited from presenting a defense.

{¶ 38} The third assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶ 39} In the fourth and final assignment of error, Dexter argues he received ineffective assistance of counsel when defense counsel did not challenge hearsay testimony, did not offer a defense exhibit, and did not challenge the arbitrary rulings by the trial court.

{¶ 40} In order to establish a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136,

538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.  To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus; *Strickland*.

{¶ 41}  In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965).  In evaluating whether the defendant has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Calhoun,* 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905.

{¶ 42} Dexter first argues defense counsel was ineffective when Nurse Meers's hearsay testimony was allowed into evidence without any objection and when defense counsel made no attempt to exclude the portions of V.W.'s testimony that had been allowed over counsel's objection.  The hearsay testimony Dexter complains of is addressed in the second assignment of error.  Having found that Nurse Meers's testimony was admissible as an exception to hearsay, and it is

presumed that the judge disregarded V.W.'s improper hearsay evidence, we cannot say the results of trial would have been different.

{¶ 43} He further argues defense counsel failed to challenge the arbitrariness of the trial court in regard to its handling of testimony. However, Dexter was allowed great latitude at trial, including hearsay testimony. In fact, Dexter testified undisturbed for approximately 20 minutes until the court interjected.

{¶ 44} Dexter next argues defense counsel was ineffective for failing to offer the visitation order into evidence. However, as discussed in the third assignment of error, the admission of the visitation order was not required for Dexter to present a complete defense.

{¶ 45} Therefore, based on the foregoing, we cannot say defense counsel was ineffective.

{¶ 46} Accordingly, the fourth assignment of error is overruled.

{¶ 47} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR