[Cite as *State v. Baldwin*, 2023-Ohio-3795.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 112440 |
| BRANDON BALDWIN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 19, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-665692-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jillian J. Piteo, Assistant Prosecuting Attorney, *for appellee.*

Weston Hurd, LLP, and Paul M. Shipp, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Brandon Baldwin appeals his conviction for the rape of a victim under the age of 13, which culminated in the imposition of a life sentence with the possibility of parole after 25 years. For the following reasons, the conviction is affirmed.

{¶ 2} The facts underlying the allegations are relatively straightforward. The victim, then ten years old, was sleeping on the floor of the living room in her home after having fallen asleep watching television. Baldwin, who was married to the victim's mother, came home in the early morning hours but was not there when the victim fell asleep. Baldwin, although living with the victim's family, was frequently in Michigan for work and to care for his ailing father. The victim woke up around 4:00 a.m. to Baldwin digitally raping her. When she woke up, Baldwin stopped and asked if she was okay. The victim recognized his voice. The assault was disclosed the following day to the victim's friend, who eventually revealed the assault to the victim's mother. After the victim disclosed the assault, her sister claimed to have been sexually assaulted by Baldwin in the past as well.

{¶ 3} Baldwin told the investigating social services personnel that he was in the house that evening and remembered seeing the victim asleep on the couch. He claims he was looking for the remote control for the television when the victim awoke.

{¶ 4} Baldwin's trial defense, carried over into this appeal, mostly focused on arguably irrelevant issues. Baldwin went through great lengths to elicit testimony that one of the victim's siblings had potentially sexually assaulted the victim or her siblings when he was six or seven years old and the victim was two years old (approximately eight years prior to Baldwin's sexual assault). According to Baldwin, because of the sibling's history, he must have been the perpetrator of the assault at issue. Baldwin also attempted to prove that the victim's mother was lying on the

witness stand about her relationship with her 19-year-old fiancé, who was introduced to the family as first becoming friends with the victim's sibling. The victim's mother testified that the relationship started after her divorce from Baldwin, after the fiancé reached the age of majority. Some testimony from other witnesses indicated the relationship began earlier, while the fiancé was a minor.

{¶ 5} The trial court, sitting as the trier of fact, found Baldwin guilty of the rape charge but acquitted Baldwin of several gross-sexual-imposition counts pertaining to the victim and her sister. This timely appeal followed.

{¶ 6} In the first assignment of error, Baldwin claims the trial court erred by "excluding evidence of another suspect of the crime." According to Baldwin, the victim's sibling was a potential suspect in light of his alleged misconduct when the sibling was six or seven years old.

{¶ 7} At trial, Baldwin repeatedly attempted to question witnesses, including the sibling, regarding the sibling's history with counseling and his own sexual misconduct allegations. Baldwin's "theory" was to blame the assault on the sibling, despite the fact that the victim expressly identified Baldwin as the perpetrator of the assault. The trial court repeatedly precluded Baldwin from pursuing that line of questioning, concluding that any past misconduct, even if accepted as true for the sake of discussion, was not relevant to the allegations pertaining to Baldwin's misconduct on the night in question. There was no evidence the sibling was even present at the time.

{¶ 8} In this appeal, Baldwin claims that the trial court's decision violated his fundamental right to establish a complete defense because he was not able to fully cross-examine witnesses on the sibling's alleged past misconduct.

{¶ 9} As the state acknowledges, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense[,]" and as a result, competent, reliable evidence is admissible when that evidence is crucial to the defendant's claim of innocence. *State v. Orr*, 8th Dist. Cuyahoga No. 100841, 2014-Ohio-4680, ¶ 39, quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). That due process right is not absolute. *Id.*, citing *Washington v. Texas*, 388 U.S. 14, 19-21, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶ 13; *Cleveland v. Dexter*, 8th Dist. Cuyahoga No. 107817, 2019-Ohio-4057, ¶ 35, quoting *Swann at* ¶ 12-13. The offender "'must at least make some plausible showing of how [a witness's] testimony would have been both material and favorable to his defense.'" *Cleveland v. Alexander*, 8th Dist. Cuyahoga No. 92282, 2009-Ohio-4566, ¶ 27, quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

{¶ 10} In this case, Baldwin claims that "[c]learly, the existence of another person in the home who had previously sexually abused the girls was essential to Mr. Baldwin's defense." It is far from clear how past allegations of abuse committed against other victims are relevant to the commission of the current crimes. At no time during the trial proceedings or in this appeal has Baldwin ever explained how

the past sexual abuse allegations could have been relevant to his defense against the current charges — much less whether the excluded evidence could be deemed essential thereto. *See, e.g.*, *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 68-70 (without evidence linking previous sexual offenses by another suspect committed against the victim to the current charges, defendant could not demonstrate the probative value of introducing unduly prejudicial evidence of the earlier offenses). Baldwin presented no evidence that anyone else was present at the time the victim claimed she was assaulted, much less that the sibling was even present in the home. Instead, he told investigators that he remembered the interaction from which the charges stemmed but claimed to be looking for a remote control to shut off the television. The trier of fact was left to decide the respective credibility to be afforded to those two versions of events.

{¶ 11} We cannot conclude that the trial court erred in deeming the past allegations against the sibling as being irrelevant and immaterial to the defense in light of the underlying factual allegations. The first assignment of error is overruled.

{¶ 12} In the second assignment of error, Baldwin claims that the trial court erred by precluding him from introducing extrinsic evidence to question the veracity of the victim's mother's statements that she entered a relationship with her fiancé after he reached the age of majority. According to Baldwin, the mother engaged in a conversation with another witness during trial. The mother allegedly "had been texting [the witness] and saying that she needed to make sure that [the witness] understood her relationship" with her 19-year-old fiancé. When the mother

testified, she claimed the relationship with her fiancé began after Baldwin's alleged misconduct. During the direct examination of the other witness, Baldwin's counsel attempted to elicit testimony regarding the mother's attempt to contact the other witness. In other words, Baldwin attempted to impeach the mother's trial testimony through the introduction of inconsistent statements made to a third party or other-acts evidence. Under Baldwin's theory, the mother "manipulated" the victim into accusing Baldwin of sexual misconduct so that the mother could continue her "illegal" relationship with her fiancé.

{¶ 13} Setting aside the fact that the victim's initial disclosure to her friend occurred almost immediately after the sexual assault and that the mother did not learn of the assault until later, "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. The trial court did not err by precluding Baldwin from presenting evidence of the mother's conduct or prior inconsistent statements.

{¶ 14} Baldwin claims the trial court erred, solely relying on Evid.R. 616(A), which provides that "bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Baldwin claims the trial court's ruling was in error because he was permitted to impeach the mother through introduction of extrinsic evidence. Although extrinsic evidence contradicting a witness's testimony may be introduced for the purposes of impeachment if "offered for the sole purpose of impeaching a

witness's testimony, [that] evidence of contradiction is inadmissible unless [it] is" otherwise permitted by common law or permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 803(18). Evid.R. 616(C).

{¶ 15} Baldwin assumes the applicability of Evid.R. 616(A); however, that conclusion is not self-evident. Baldwin's attempt to impeach the mother with extrinsic evidence was not for the purpose of demonstrating her bias, prejudice, interest, or a motive to misrepresent her testimony regarding the allegations against Baldwin. Instead, Baldwin was attempting to demonstrate that the mother urged another witness to not disclose potentially embarrassing (if not criminal) instances of conduct regarding the origins of her current relationship in an effort to impact the mother's general character for truthfulness, the stated basis for the evidence Baldwin advanced at trial. Tr. 475:3-11.

{¶ 16} Under Evid.R. 608(B), parties are generally precluded from introducing extrinsic evidence of specific instances of conduct solely to attack the witness's character for truthfulness such that the evidence of the mother's discussion with the other witness cannot be proven through extrinsic evidence. *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 60 (8th Dist.), citing *State v. Smith*, 10th Dist. Franklin No. 04AP-726, 2005-Ohio-1765, ¶ 39. A defendant may only question a witness on cross-examination regarding prior instances of misconduct when the questioning is "clearly probative" of the witness's character for truthfulness. *State v. Penland*, 8th Dist. Cuyahoga No. 111531, 2023-Ohio-806, ¶ 64, quoting *State v. Jones*, 2015-Ohio-2151, 35 N.E.3d

934, ¶ 37-38 (8th Dist.). But in this case, the mother was not asked about her conversation with the other witness during her testimony.

{¶ 17} Mother's alleged statement to the other witness, inasmuch as that statement contradicted her trial testimony, is not admissible through the other witness without offering the mother the opportunity to explain or deny the statement. Under Evid.R. 613, "extrinsic evidence of a prior inconsistent statement by a witness is admissible if * * * the statement is offered solely for the purpose of impeaching the witness, [and] the witness is afforded a prior opportunity to explain or deny the statement." There is no indication in the record that Baldwin attempted to question the mother regarding her alleged statements to the other witness. Baldwin solely attempted to introduce the impeachment evidence through another witness without providing the mother an opportunity to explain the inconsistency. This is not permitted. *See State v. Munoz*, 8th Dist. Cuyahoga No. 112006, 2023-Ohio-1895, ¶ 13. The second assignment of error is overruled.

{¶ 18} In the third and final assignment of error, Baldwin claims that a mistrial should have been granted based on the mother's alleged conversation with the other witness in which the mother allegedly "had been texting [the witness] and saying that she needed to make sure that [the witness] understood her relationship" with her then fiancé. According to Baldwin, the mother's testimony that she did not start a relationship with her fiancé until after the allegations of the sexual assault were disclosed to police officers was false. Based on that, the contact violated the trial court's instruction for witnesses to avoid discussing the case with each other.

At the time, however, the state had not subpoenaed the witness and it is unclear whether Baldwin had perfected a subpoena on the witness at the time of the alleged conversation. Tr. 378:20-25 (the witness indicated that she had not received the subpoena).

{¶ 19} Nevertheless, the trial court denied Baldwin's request for a mistrial after agreeing with the state that the issue was "tangential" and not relevant to the allegations against Baldwin.

{¶ 20} Baldwin's sole claim in this appeal is that the mistrial was required based on the "larger question of whether the mother committed perjury during her testimony." The mother's exposure to perjury charges based on her testimony regarding her relationship with her fiancé has no bearing on Baldwin's guilt or the fairness of his trial. On this point, Baldwin's sole claim is that "the mother's illicit and illegal affair with [her fiancé] took place prior to the allegations against Mr. Baldwin and caused the mother to manipulate [the victim] into accusing Mr. Baldwin of sexual" misconduct in an effort to end her marriage and pursue a relationship with her fiancé. The content of the excluded testimony was limited, with mother asking the other witness whether she understood the mother's relationship with the fiancé. There is no indication in the record that the victim ever spoke to her mother regarding the allegations until after the victim had already disclosed the assault to her friend. It is a speculative leap, with several layers of inference stacking in between, between the content of the text message and the mother contriving the events by manipulating her daughter into fabricating the

assault allegations. For the purposes of the abuse-of-discretion review, this type of speculation is insufficient.

{¶ 21} A mistrial should be declared only when a fair trial is no longer possible. *State v. Bolognue*, 9th Dist. Summit No. 18171, 1997 Ohio App. LEXIS 4116, 11-12 (Sept. 10, 1997), citing *State v. Stewart*, 111 Ohio App.3d 525, 533, 676 N.E.2d 912 (9th Dist.1996), citing *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). Without more, we cannot conclude that the trial court abused its discretion in determining that the potential evidence of perjury on a tangential issue unrelated to elements of the crime for which Baldwin was charged deprived him of a fair trial. A fair trial need not be a perfect one. The third assignment of error is overruled.

{¶ 22} Baldwin's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR