[Cite as *State v. Cartwright*, 2024-Ohio-662.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                :

    Plaintiff-Appellee,          :

                                      No. 112685

    v.                                    :

TAYLON L. CARTWRIGHT,               :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 22, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675929-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chauncey Keller, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Taylon Cartwright appeals his conviction for substantial impairment rape, in violation of R.C. 2907.02(A)(1)(c), which resulted in a 5-year stated minimum term of imprisonment imposed under R.C. 2929.14(A)(1)(a) and a

maximum term of 7.5 years as calculated under R.C. 2929.144(B)(1). For the following reasons, we affirm.

{¶ 2} Cartwright and the victim were friends, having met through their shared employment. Unlike the victim, Cartwright harbored some romantic feelings toward the victim extending beyond friendship. On the victim's day off from work, she dropped her children off at day care and called Cartwright and two other friends (who also worked with Cartwright and the victim) to meet at the victim's apartment to socialize. The victim testified to arriving at the day-care facility between nine and nine thirty. The victim's friends had to be at work at 11:00 a.m., however, and they declined the invitation but said they would stop by on their way to work. Cartwright lived near the day-care facility and agreed to meet the victim. The victim picked him up and the two drove back to the victim's home. The victim's timeline of events differs from Cartwright's and that of the victim's friend who testified at trial.

{¶ 3} The victim admittedly "chugged" a couple large glasses of wine and "passed out" after returning home. She described "passing out" as feeling the effects of the alcohol and not intending to fall asleep. According to Cartwright's Mirandized statement to the investigating officers, the victim was already intoxicated when she arrived at Cartwright's home. He drove her home at around 9:00 a.m. that morning. After the victim passed out (his words), Cartwright took a photograph of the victim depicting her asleep on a pile of clothes. Between 9:30 and 11:00 a.m., Cartwright drove to their place of employment because he was supposed to work a day shift. Upon arriving, he showed the photograph of the victim to another employee, who

then shared it with one of the managers. Cartwright claimed that he went to work to tell his supervisor that he was unable to work his first shift because he had the victim's car, which he needed to return, and he was taking care of the victim in her intoxicated state. Sometime before 11:00 a.m., Cartwright returned to the victim's home.

{¶ 4} According to Cartwright, the victim woke up and they engaged in sexual conduct, but it was not a long encounter, according to his statement, because he did not feel right engaging in sex with the victim in her state of inebriation. He nonetheless confirmed that penetration occurred, and he maintained that she repeatedly consented to the sexual conduct. Implicitly, he subjectively believed her capable of providing that consent. Fifteen minutes after the sexual conduct, still according to Cartwright, the victim's two friends arrived to check on the victim, who had not been responding to text messages despite their plans to visit. Cartwright let the friends into the apartment.

{¶ 5} According to one of the friends, the one who testified at trial, they arrived slightly before 11:00 a.m. and found the victim passed out prostrate on the floor of her children's room having just urinated on herself. They helped the victim to her feet and changed her soiled clothes. At the time, the victim was unable to stand without "wobbling." She fell into her television. After the victim woke up a bit, she sat on the couch. Her friend brought her some food. The victim was heavily flirting with Cartwright, who was by then denying her advances. The friends left because they were both late for work.

**{¶ 6}** The victim testified to returning to her apartment between 10:45 and 11:15 a.m. after picking up Cartwright. According to the victim, she remembered "chugging" a large glass of wine or two after returning home. She sat on the couch and "passed out" while waiting for her friends to arrive. She did not remember anything else until around 4:00 p.m., when she awoke and discovered that she was "barely dressed." Her pants were pulled down and her shirt was not entirely on. It is not clear whether those clothes were the same as the clothes that the victim's friends had changed her into during their brief visit. The victim recalls seeing unexplained marks on her thighs and feeling soreness in her genital area.

**{¶ 7}** She drove Cartwright to work that evening so that he could work the second of his assigned shifts that day. According to the victim, Cartwright was acting strangely but would not give her a straight answer as to why. Upon further questioning Cartwright about why he felt bad, she asked why he would "do that," having guessed at what occurred. The victim testified to Cartwright's stating he felt bad because she was asleep and drunk during the sexual encounter.

**{¶ 8}** After a day or two, the victim reported the rape to the police department, and the investigation ensued.

**{¶ 9}** Upon that evidence, at a bench trial, the trial court found Cartwright guilty of having engaged in sexual conduct with the victim, who was not his spouse, when he knew or had reasonable cause to know that the victim's ability to resist or consent was substantially impaired due to the voluntary intoxication.

R.C. 2907.02(A)(1)(c). This timely appeal followed in which Cartwright advances two assignments of error.

{¶ 10} In the first assignment of error, Cartwright claims that the trial court "erred in excluding admissible lay opinion evidence concerning [the victim's] level of intoxication." During the victim's friend's testimony, defense counsel asked, "[I]n your lay opinion, what degree of intoxication would you say she was at?" The trial court sustained the state's objection to the question. No clarification for the ruling was requested.

{¶ 11} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. In addition, the admission or exclusion of the evidence must affect the defendant's substantial right. Evid.R. 103. As a result, the defendant must demonstrate that he was "materially prejudiced" by the evidentiary misstep. *State v. Lowe*, 69 Ohio St.3d 527, 532, 634 N.E.2d 616 (1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984).

{¶ 12} Cartwright's argument is based entirely on Evid.R. 701, which provides that "[i]f the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue." According to Cartwright, "[l]ay testimony concerning another person's state of intoxication is admissible so long as the appropriate foundation is laid," citing *State*

*v. Wargo*, 11th Dist. Trumbull No. 96-T-5528, 1997 Ohio App. LEXIS 4846 (Oct. 21, 1997), and *Mayfield Hts. v. Molk*, 8th Dist. Cuyahoga No. 84703, 2005-Ohio-1176, ¶ 31; *see also State v. Schmitt*, 101 Ohio St.3d 79, 83, 2004-Ohio-37, 801 N.E.2d 446.

{¶ 13} Cartwright's reliance on Evid.R. 701 and the above-cited material is misplaced. The trial court permitted the friend to testify as to the extent of the victim's inebriation at length, which is permitted under Evid.R. 701 and the authority provided by Cartwright. The argument being presented is not the correct framing of the issue. It appears the primary issue with the state's sustained objection was the inartful phrasing and Cartwright's attempt to have the friend articulate a specific gradation to describe the victim's level of intoxication.

{¶ 14} Cartwright thus assumes that the trial court's decision to sustain the state's objection was based on Evid.R. 701, but that assumption is not self-evident. *See, e.g., State v. Baldwin*, 8th Dist. Cuyahoga No. 112440, 2023-Ohio-3795, ¶ 15 (defendant's appellate argument, based on the general rule that a defendant may impeach a witness, was overruled because the exclusion of the testimony was based on another evidentiary rule that precluded the introduction of extrinsic evidence to impeach a witness through a third party). Although the trial court precluded Cartwright from attempting to have the witness assign a specific gradation to describe the level of the victim's intoxication, the court permitted, and even solicited, evidence of the victim's level of intoxication from the friend:

Q. Was she that intoxicated that she was falling down drunk?
A. She was wobbly. Yeah.

Q. And she wasn't falling down drunk to the point of passing out?
A. Not passing out.  Not that I've seen. Because when I was talking to her, she was able to respond.

\* \* \*

THE COURT: So, \* \* \* when you arrived, you had the sense that [the victim] was to some degree, whether buzzed, drunk, or smashed, whatever word you want to use, but was to some degree intoxicated?

THE WITNESS: She was very intoxicated.

Tr. 127:15-21, 130:21-131:1.  Further, defense counsel was permitted to question the friend about the victim's physical capabilities with respect to her level of intoxication — telling the court that the victim was responsive to them before the friends left.

{¶ 15} Cartwright's claim, limited to the proposition that the trial court's ruling prevented him from presenting relevant evidence, is not borne out by the record.  He presented evidence of the victim's level of intoxication for the trial court's consideration in determining whether the victim was substantially impaired.  The single line of questioning seeking a specific, but undefined, gradation about the specific level of the victim's inebriation did not affect a substantial right.  Since Cartwright's entire argument is based on Evid.R. 701, which does not appear to be the basis of the trial court's decision given the totality of the testimony at issue, the first assignment of error is overruled.

{¶ 16} In the second and final assignment of error, Cartright claims that his conviction is based on insufficient evidence because the state failed to present evidence that the victim was substantially impaired at the time of the incident; that Cartright knew or had reason to believe that the victim was incapable of consenting;

or that the victim and Cartwright were unmarried. None of those arguments have merit.

{¶ 17} Cartwright was convicted of rape in violation of R.C. 2907.02(A)(1)(c), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when" the victim's "ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired * * *." "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 156, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} It is undisputed in this case that voluntary intoxication or impairment may constitute a "mental or physical condition" as used in R.C. 2907.02(A)(1)(c). *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, ¶ 15, citing *In re King*, 8th Dist. Cuyahoga Nos. 79830 and 79755, 2002-Ohio-2313. The phrase "substantially impaired" is not statutorily defined. In *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987), the Ohio Supreme Court concluded that it "must be given the meaning generally understood in common usage." *Id.*; *see also State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 41. It is sufficient for

the state to establish substantial impairment by establishing a then-present reduction or decrease in the victim's ability to act or think. *Zeh* at 103-104. "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim * * *" or the victim herself. *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78; *State v. Smith*, 8th Dist. Cuyahoga No. 111870, 2023-Ohio-1670, ¶ 19.

{¶ 19} As the trial court expressly acknowledged in rendering its verdict, R.C. 2907.02(A)(1)(c) was not intended to criminalize sexual conduct as the result of an alcohol or drug-induced state of lowered inhibitions. "A person's conduct becomes criminal under this section only when engaging in sexual conduct with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication." *Doss* at ¶ 15.

> [T]here can be a fine, fuzzy, and subjective line between intoxication and impairment. Every alcohol consumption does not lead to a substantial impairment. Additionally, the waters become even murkier when reviewing whether a defendant knew, or should have known, that someone was impaired rather than merely intoxicated. Of course, there are times when it would be apparent to all onlookers that an individual is substantially impaired, such as intoxication to the point of unconsciousness. On the other hand, "a person who is experiencing [an alcohol induced] blackout may walk, talk, and fully perform ordinary functions without others being able to tell that he is 'blacked out.'"

*Id*. at ¶ 18, quoting Westin, *Egelhoff Again,* 36 Am.Crim.L.Rev. 1203, 1231 (1999). As a result, there is a continuum between impairment and unconsciousness, with

somewhere in between defining what is legally sufficient to establish substantial impairment and the defendant's knowledge of that impairment.

{¶ 20} On that point, and as the argument is framed by Cartwright, *Doss* remains instructive. In that case, the victim consumed excessive amounts of alcohol during the course of one New Year's Eve celebration. She testified to blacking out around midnight and not remembering anything until the next morning. A bartender testified that the victim was only served water after midnight because she was severely intoxicated, slumping over while sitting at tables, but by all outward appearances, the victim was carrying on conversations, sitting, standing, and dancing with the defendant, impacting the evidence demonstrating the defendant's knowledge of the incapacity. *Id.* In reversing the conviction, the *Doss* Court held that the bartender's statements about the victim "does not give rise to the inference that appellant knew, or should have known, about such impairment." *Id.* at ¶ 22; *see also State v. Schmidt*, 8th Dist. Cuyahoga No. 88772, 2007-Ohio-4439 (noting the victim walked and talked normally prior to the sexual encounter and only "passed out" momentarily before the vaginal penetration for which she did not consent).

{¶ 21} On the other end of the continuum, evidence of the defendant admitting to the victim that he took advantage of the situation in engaging in sexual conduct while the victim is "pretty drunk" is evidence establishing the defendant's knowledge of the victim's substantial impairment. *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 47-48. In *Virostek*, the victim and the

offender were friends but often engaged in sexual conduct throughout their friendship. On one evening, the victim was described as being "loaded," "wasted," and "pretty intoxicated." *Id*. at ¶ 4. She went to the offender's sister's house to retrieve something, and suffered a bout of vertigo, which causes dizziness, imbalance, unsteadiness, or a very unsteady feeling — a condition exacerbated by alcohol consumption. *Id*. at ¶ 5. While lying down to combat the condition, the defendant engaged in sexual conduct with the victim, who was unable to resist due to her inebriation and medical condition. After the encounter, the offender texted the victim professing his remorse because he should have recognized the victim's condition at the time and he betrayed her trust and friendship. *Id*. at ¶ 20. Upon that evidence, the defendant's knowledge of the victim's substantial impairment was deemed to be based on sufficient evidence.

{¶ 22} In this case, Cartwright's statement to the investigating officers was self-defeating. He admitted to the officers that he engaged in sexual conduct with the victim 10 to 15 minutes before the victim's friends arrived and found the victim passed out prostrate on the floor, unable to control her bodily functions. The friends testified to having to assist the victim in cleaning herself up and getting dressed because of the level of her intoxication. Unlike in *Doss*, where the victim appeared to act and converse normally with the defendant, there is no evidence that the victim was functioning in any capacity 15 minutes before the friends found her in that state. That evidence alone demonstrates the victim's substantial impairment at the time of the sexual conduct, and any issues as to her actual impairment 15 minutes earlier

is a question left to be weighed by the trier of fact. Cartwright has not included an argument challenging the weight of the evidence.

{¶ 23} While Cartwright attempts to argue that there was no evidence demonstrating that he was aware of or had cause to know of the victim's substantial impairment, he only offers his own opinion on that matter — through his statements to the investigating officers. Like in *Virostek*, however, Cartwright made statements to the victim regarding his remorse for engaging in sexual conduct while the victim was intoxicated — reasonably implying that he understood her diminished capacity. Coupled with the friend's objective description of the victim's inability to function normally shortly after the sexual encounter, there is sufficient evidence demonstrating that Cartwright at least had reasonable cause to know of the victim's substantial impairment. And further, he expressly told coworkers that he was returning to the victim's home because she needed looking after in light of her intoxicated state — from which a reasonable inference could arise that the victim was substantially impaired to the point of needing assistance shortly before the sexual encounter. *See, e.g., State v. Gardner*, 8th Dist. Cuyahoga No. 107573, 2019-Ohio-1780, ¶ 32. There is sufficient evidence demonstrating Cartwright's knowledge of the victim's substantial impairment.

{¶ 24} And finally, Cartwright claims that the state must expressly ask the victim whether she and the defendant are unmarried in order to present sufficient evidence substantiating the element that the victim is not the spouse of the offender. Although that is the better practice, as Cartwright concedes, "[w]hen the state fails

to affirmatively ask the victim whether she was the spouse of the offender, * * * the trial court is permitted to infer from the testimony or circumstances, if sufficient, that a defendant and his victim are not married." *State v. Brown*, 8th Dist. Cuyahoga No. 86577, 2006-Ohio-4584, ¶ 13, *see also Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, at ¶ 39 (evidence that the defendant and victim were lifelong friends supports the reasonable inference that the parties were unmarried).

{¶ 25} In this case, when asked to describe their relationship, the victim testified that she and Cartwright were merely friends and that she had no romantic or sexual feelings for him. Cartwright further confirmed that their relationship did not extend beyond friendship, having just met at their shared place of employment. And further, Cartwright and the victim lived in separate homes. That is sufficient to give rise to a reasonable inference that the parties are unmarried, and Cartwright has not cited any evidence rebutting that presumption.

{¶ 26} The second and final assignment of error is overruled. The state presented sufficient evidence of each and every element of R.C. 2907.02(A)(1)(c) when the evidence is considered in the light most favorable to the state.

{¶ 27} With no other arguments to address, the conviction is affirmed.

It is ordered that appellee recover of appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR